The Penn Mutual Life Insurance Company *et al.*

*v.*

Peter Heiss *et al.*

*Filed at Mt. Vernon May 9, 1892.*

141 35
146 166

141 35
149 297
150 571
154 625

141 35
160 534

141 35
157 134

141 35
54a 189
58a 328
58a 462

141 35
61a 81

141 35
65a 375

141 35
165 518

141 35
69a 512

141 35
170 332
171 514

141 35
86a 214
87a 600

141 35
186 [5]487

141 35
192 [9]247

141 35
e100a[3]337

1. Railroads—use of streets—*how right acquired—abutting owners—rights and remedies.* Notwithstanding the constitutional provision that private property shall not be damaged for public use without just compensation, a railroad company acquiring the right to lay its tracks in the streets of a city is not required to institute condemnation proceedings in respect of damages which may accrue to owners of property abutting such streets.

2. And when no part of the land of an abutting lot owner is entered upon or sought to be condemned for public use, such owner is not entitled to have proceedings instituted, under the Eminent Domain law, to ascertain what damages his property may sustain in consequence of the construction and operation of a railroad in an adjoining street, but the land owner is remitted to his action at law to recover his damages.

3. Where the property of an abutting lot owner is damaged by the construction and operation of a railroad upon a public street under license of the municipal authorities, there will be a forced deprivation of property, or damaging of the same, without the owner's consent, and this in every just sense is a taking of private property of such owner to the extent to which his property is thus damaged.

4. Where private property is injured in value by the use of a street bounding the same, it may be that he is without remedy until the damage has actually occurred and the amount of such damage ascertained in an action at law. But when the damages are ascertained in the mode provided by law, the right of the lot owner to the payment of the same as compensation is guaranteed to him by the constitution, as a condition to the continued appropriation of the street to the public use, whereby the injury to his private property is inflicted.

5. Same—*damages to abutting property—how recovered.* The right to recover damages for an injury to private property occasioned by the occupancy of a public street by a railroad, or the taking of other property for the public use, is secured to the property owner by section 13 of article 2 of the constitution of 1870, and the railroad company will be liable for all direct physical damages accruing from the construction and operation of such railroad to such contiguous or abutting owner. The action for damages to property not taken may be regarded as in the nature of one kind of condemnation proceeding, and in all cases

where no land is taken there should be but one proceeding for the recovery of damages, in which the recovery should include the entire damages, past, present and future.

6. Although the legislature has failed to provide in the Eminent Domain act for the assessment of compensation for damages to private property which is not taken or sought to be appropriated, the property holder is not left without a remedy. He may nevertheless have his action at common law, and thereby have his compensation "ascertained by a jury," as required by the constitution.

7. SAME—*liability of grantee for damages to abutting property.* It is not in the power of a railway company which has damaged private property for the use of its road, to defeat the constitutional guaranty of just compensation, by alienation or otherwise, and the alienee, purchaser or successor will be required to take notice of the provisions restricting the power to take or damage private property for public use, and be held to take subject to the burden cast upon the railroad by, through or under whom the interest is acquired. It does not follow that a right of action will exist against the new company who may, as successor of the original company, become possessed of the franchise and property; but when a mortgagee or a successor company insists upon a continuation of the use, or when there is an appropriation of that part of the railroad whereby the damage has been occasioned,·the right of the lot owner to compensation out of the *res* is absolute.

8. A railway company, having but a part of its road completed, gave its mortgage upon its entire line, part of which was only projected, to secure its bonds. The mortgage recited that the bonds were to be issued at the rate of $10,000 a mile, as the projected road should be completed. At the terminus of the road the tracks were laid in a public street, under leave of the city authorities, without the payment of any damages to the owners of lots abutting upon the street. Afterward, such owners brought suits against the company, alone, for damage to their lots, in which they recovered judgments, the mortgagee and bondholders not being made parties. On bill filed by the judgment creditors to enforce payment of the judgment, the mortgagee and bondholders filed a cross-bill to foreclose the mortgage, claiming a prior lien under the mortgage, which had been recorded long before the recovery of the judgments. The court opened the judgment, and allowed a defense to be made to the suits at law. After trial and judgment, the court, by its decree foreclosing the mortgage, gave the judgment creditors the priority in payment: *Held,* that the court did not err in decreeing that the damages to the abutting lot owners, the plaintiffs in the judgments, should have priority of payment out of the proceeds of the sale of the road under the decree of foreclosure.

9. SAME—*damages to abutting property—when right of action to recover accrues—measure of damages.* A right of action accrues to a lot

owner for damages caused thereto by the location and operation of a railroad in the street in front of his lot for any injury to the same, from the time of the completion of the road and its operation, in which he may recover prospective as well as present damages. But such owner is not bound to sue immediately, and the defendant can not complain that he waits until his damages become susceptible of absolute proof before bringing his action, instead of resorting to prospective damages.

10. If the suit is brought within the Statute of Limitations, which is five years, proof may be made of the permanent damages to the property, and, the recovery being once for all, may include all damages flowing from the location and ordinarily skillful operation of the road.

11. SAME — *survivorship of right of action for damages to abutting property.* Where a lot is injured or damaged by the construction and operation of a railroad in the street in front thereof, a right of action will accrue to the owner of the lot, against the railway company, as soon as the railroad is built and put into operation, and on the death of such owner the right of action will pass to his personal representative, and not to his heir or devisee, such right not being assignable.

12. SAME—*court powerless to enforce payment of damages by injunction.* This court is probably committed to the doctrine that injunction will not lie at the suit of the abutting property owner, when the entry upon and occupation of a street by a railroad is by the authority of the municipal agency invested with the control of such street. The want of power of a court of equity to interfere by injunction is predicated upon the impracticability of the ascertainment of the damage that will be done. But when the land owner has settled his right to damages, and their measure, in an action at law, if any reason exists why he can not have execution of the same, equity will assist him, but not before.

13. SAME—*measure of damages to tenant of abutting property.* The measure of recovery of a tenant for injury to his business by the location and operation of a railroad in the street in front of his place of business, is limited to the loss of probable profits of his business, shown by the evidence, from the time of the construction of the road and its operation on the street, to such time as the tenant might, by the use of reasonable diligence, have procured another place of business equally eligible for the transaction of his business, including a reasonable time for the removal of the same.

14. SAME—*estoppel of abutting land owner to claim damages.* If the owner of property urges or induces a railroad company to locate its road upon the adjacent street, he will, after the invitation has been acted on, be estopped from claiming damages or enjoining the operation of the road. But the fact that such owner requested an alderman of the city to vote for the ordinance granting the right to the company to locate its road on the street, when it is not shown that such vote

was necessary for the passage of the ordinance, will not be sufficient to estop him from maintaining an action for damages to his business. To create an estoppel there must be some affirmative act by the person sought to be estopped, in reliance upon which the other party has acted to his prejudice.

15. SAME—*judgment against, for damages to abutting property — whether binding on mortgagees.* A judgment by default against a railroad company for damage to private property adjacent to its road, is not binding, as to the amount of damages, upon the mortgagees of the company and its bondholders secured thereby. And on a contest between the holders of such bonds and the owners of property damaged by the construction of the road, as to priority of payment out of the proceeds of a sale of the road on foreclosure, it is not error for the court to open such judgment, and to require a re-assessment of damages by the jury.

16. EMINENT DOMAIN—*nature and character.* The right of eminent domain is an essential attribute of sovereignty, inherent in every independent government, and to be exercised, in the discretion of the sovereign power, to promote the general welfare of the people. The right of the citizen to own, possess and enjoy his property must necessarily give way to the right of the State to appropriate it to public uses, when, in the judgment of the sovereign power, the public interest will thereby be promoted. The taking or damaging of private property for the construction, operation and maintenance of railroads is a public use, within the meaning of the constitution.

17. SAME—*compensation—when to be paid.* The sovereign power of the State has seen fit to place a restriction upon the exercise of the right of eminent domain, that just compensation for the taking or damaging of private property shall be paid. But the compensation need not be paid before the taking or damaging. It is sufficient that provision be made for compensation afterward, provided the payment be made certain.

18. SAME—*lien of owner on land taken, for his compensation.* Where land has been taken by a railway company, the owner's right to compensation will not be defeated by a mortgage or alienation by the railway company, unless the owner has done some act amounting to a waiver of his right to compensation, or by which he is estopped from asserting it. In many of the cases his right to payment, as against an alienee of the company, is placed upon the ground that, the compensation not having been paid, the title to the land sought to be taken remains in the original proprietor, and that ejectment will lie at his suit to recover the land, or, when the amount of compensation has been ascertained by condemnation, it may be treated as a forced sale of the land, and a lien in the nature of a vendor's lien enforced against the property.

19. The right to compensation before the owner can be deprived of his property being secured by constitutional provision, such title can not be divested except on payment of the compensation, or its equivalent, by any act of the legislature or of the railroad company; and an alienee or incumbrancer thereof will take *cum onere* the right of the owner to compensation, and is not, therefore, an innocent purchaser.

20. Same—*measure of damages—prospective damages—right of the grantee to recover.* All special damages, present and prospective, to the owners of lands, resulting or to result from improperly constructing, maintaining and operating a railroad under the laws of this State, constitute, as to such land owner, one single, indivisible cause of action, which may be enforced under the Eminent Domain act, or any other appropriate form of action. After such right of action has once accrued, if the land is conveyed to another the latter can not maintain any action for damages which could have been anticipated and allowed as prospective damages, in a suit the grantor might have brought.

Appeal from the Circuit Court of Marion county; the Hon. B. R. Burroughs, Judge, presiding.

The Jacksonville Southeastern Railway Company was organized under the statute of Illinois, in the year 1879, and was empowered to construct, build and own a line of railway from the city of Jacksonville to Centralia. It acquired title to the line of railway then existing from Jacksonville to Virden, and on July 1, 1880, it executed a mortgage on the latter line of road and its contemplated line from Virden to Litchfield, and issued three hundred bonds, of $1000 each, secured by said mortgage, and drawing interest, payable semi-annually, at six per cent per annum, and having thirty years to run. On July 1, 1882, the company executed a second mortgage upon all its line of road then constructed and thereafter to be constructed from Jacksonville to Centralia, including all property then owned or thereafter to be acquired, to secure eleven hundred and twenty bonds of that date, payable July 1, 1912, each for $1000, drawing interest at the rate of six per cent per annum, payable semi-annually. Said bonds contained a condition that the trustees therein appointed, or their successors in trust, might enter and take possession of the said

railroad and equipment if the railroad company should permit its interest to remain due and unpaid for six months or should fail to pay taxes for six months after due, and providing that said trustees might, after said interest had so remained due and unpaid for six months, declare the principal of the said bonds due and payable. By the terms of the mortgage the bonds were to be issued as the work progressed, at a rate not to exceed $10,000 for each mile of completed railroad. The length of the main track of railroad, from Jacksonville to Centralia, is one hundred and ten miles. The mortgage was duly recorded in each of the counties into and through which the contemplated line was projected.

On the 10th of January, 1883, the city authorities of Centralia duly passed and published an ordinance granting to the railway company the right to lay a single railway track upon Chestnut street, in said city, the same to conform to the grade to be fixed by the city authorities, and to be used thereafter for railroad purposes. The bonds were sold in the market, and with the proceeds thereof the railway from Litchfield to Centralia was constructed, and in the month of October, 1883, a track was laid in Chestnut street, in compliance with said ordinance, and the same has been since used and operated for general railroad purposes.

In December, 1887, and in the early part of January, 1888, fourteen suits at law were instituted against the Jacksonville Southeastern Railway Company, in case, by owners of property abutting on Chestnut street, to the February term, 1888, of the circuit court of Marion county. At the August term, 1888, of the court, in the suit wherein the heirs of one Philip Widmann, deceased, were the plaintiffs, leave was given to amend, and amendment was made by striking out the names of the heirs, plaintiffs, and inserting the name of Barbara Widmann, administratrix of the estate of Philip Widmann, deceased. It also appearing that Minnie Vortride, the plaintiff in one of said suits, had departed this life since the suit was

instituted, A. Vortride, as her administrator, was substituted as plaintiff.

In 1887 the Louisville and St. Louis Railway Company constructed a line of railroad from the southern terminus of the line of the Jacksonville Southeastern railway on Chestnut street, in Centralia, to Drivers, a station on the line of the Louisville and Nashville railroad, and from that time trains ran through from Jacksonville to Drivers. On the 19th of June, 1888, the Jacksonville Southeastern Railway Company conveyed its line of railway to the Louisville and St. Louis Railway Company, and from that time till the trustees, Dunn and Butler, named in the mortgage of July 1, 1882, entered into possession for non-payment of interest, the latter company operated the same. The trustees entered into such possession in June, 1889, and declared the principal of the bonds due for default in payment of the interest for more than six months. Executions were issued on said several judgments at law, and returned not satisfied. To the February term, 1889, of said court, the plaintiffs in said common law judgments filed their bill in chancery, setting up said judgments in their favor, and charging that said conveyance to the Louisville and St. Louis Railway Company was void, for want of power in the grantor to make or the grantee to accept a deed for said property, and asking for a receiver. Afterwards, the bill was amended by making the trustees named in said deeds of mortgage, parties defendant.

The Jacksonville Southeastern Railway Company, the Louisville and St. Louis Railway Company, and Dunn and Butler, as trustees, filed separate answers to the bill as amended, setting up as prior liens the mortgages before mentioned, and insisting the lien created thereby was superior to any demands in favor of the complainants, or either of them, and alleging the judgments were not binding upon the mortgage creditors. Dunn and Butler, as trustees, also answered that they were in possession of the road, under the provisions of the mort-

gage deed, for default in payment of taxes and interest, and that they, under the powers given them by the provisions of the mortgage deed, had declared the principal of the eleven hundred and twenty bonds due; that holding a first and superior lien upon the property, and being in possession for condition broken, the court had no power to oust them and appoint a receiver until the debts they represented had been fully paid. Shortall and Freer, as trustees under the first mortgage, answered, setting up the first mortgage, and asked to be protected.

Appellants, as holders of the bonds secured by the mortgage deed of July 1, 1882, (second mortgage,) filed a bill in the circuit court of Morgan county, seeking to foreclose the mortgage. A motion was pending in said chancery cause of Peter Heiss and others, plaintiffs in said common law judgments, against the Jacksonville Southeastern Railway Company and others, for the appointment of a receiver, and a stipulation was made, by which it was agreed that the motion for a receiver should be postponed until the next term of the circuit court of Marion county; that the deed of June 19, 1888, from the Jacksonville Southeastern Railway Company to the Louisville and St. Louis Railway Company, referred to, should be treated as for nothing as against the complainants in the bill; that the parties filing the bill in Morgan county for a foreclosure of the mortgage should dismiss the same, and ask to be made defendants in the chancery suit pending in the Marion circuit court, and have leave to file a cross-bill, and that two questions should be made: First, whether the several judgments set up in the original bill were to be held as conclusive upon the mortgage creditors of the railroad; and second, whether any sum that might be found due complainants, or either of them, should, under the constitution of the State, be held to be a superior or first lien upon the mortgaged property, or should the lien created by the mortgage, which was prior in date of execution and recording, be held the first and superior lien.

The appellants thereupon became parties defendant to the bill pending in the Marion circuit court, and filed an answer to the same, in which they set up that they were each holders of bonds of the Jacksonville Southeastern Railway Company secured by the deed of mortgage of July 1, 1882, and that the mortgage was prior in date to that of any claim originating in favor of either of the complainants in the original bill; that their lien was superior to that of complainants, and that if any part of the demand of the complainants was to be held superior to that of the mortgage, it could be only for such as in fact existed by reason of injury to the real estate mentioned, and that the holders of said securities were not bound by the several judgments set up in the bill; that they were holders of said bonds purchased in open market, and that the proceeds of the sale of said bonds had been used in the construction of the railroad from Litchfield to Centralia. Appellants also filed a cross-bill against said railroad companies, and also against the said complainants in the original bill, setting up the same facts, and alleging the several ownership of the bonds of the issue of July 1, 1882, by the cross-complainants, and sought for foreclosure of said mortgage.

It is admitted that the damages claimed by complainants in the original bill were for injury to the abutting property on Chestnut street by reason of the construction and operation of the railroad on that street, and that there had been no physical invasion of the property, intrusion upon the possession of the same, or injury from unskillful construction or operation of the railroad upon that street. It was also admitted that complainants in the cross-bill were the holders of the bonds as charged in said cross-bill, and that the railroad company had made default in the payment of taxes and interest, as charged, and that Dunn and Butler, as trustees under said second mortgage, had entered into possession, representing the mortgage creditors, and claimed to hold a superior and prior lien to any lien of the judgments for such damages.

At the February term, 1890, the circuit court entered a decree of foreclosure of the mortgage, finding by the same the several sums due the complainants in the cross-bill, as follows: Due to Tower and Lee, executors, etc., $213,906.84; to Litz, $106,958.42; to Daniel B. Cummins, executor of Williamson, deceased, $171,125.47; to Daniel B. Cummins, $10,655.42; to the Penn Mutual Life Insurance Co., $53,476.71; to John M. Kennedy, $25,668.17; to Edw. Y. Townsend, $26,733.35; to the Pennsylvania Fire Insurance Company, $32,086.02. The court ordered the aggregate of these sums paid by the railway company, and in default of which, that the mortgage be foreclosed, and that the master sell the same without redemption, and as one property; that the purchaser be required to pay in, on the day of sale, $50,000 cash or in bonds, and that he pay in cash, in ninety days from sale, $55,000 to the master; that the balance of the purchase money might be discharged in the bonds of the date mentioned, at the election of the purchaser; that the holders of bonds who had not been made parties might appear before the master and prove up ownership, and share equally with the complainants in the cross-bill. The court further provided in the decree that the complainants in the original bill had, by force of the provisions of the constitution of 1870, a first and prior lien upon said railroad and other property, and entitled to be paid out of the proceeds of the sale before the complainants in the cross-bill could be paid. The court further held that complainants in the cross-bill were not concluded by the judgments rendered against the Jacksonville Southeastern Railway Company, and directed the same be opened, and that a jury be impaneled, at the next term of the court, to ascertain the amount of damages sustained by each of said complainants in the original bill, and that the master report his proceedings under the decree.

On the 10th of May, 1890, the master sold said railroad and all its equipments, according to the terms of the decree, and

at that sale a committee representing the mortgage creditors became the purchasers of the same for the sum of $500,000, the same being made subject to the lien of the first mortgage for $300,000 and unpaid interest, the amount of unpaid taxes, and subject to settlement with Dunn and Butler, as trustees, resulting from their possession and operation of the road. The purchasers paid to the master on the day of sale the costs of sale, $281.55, and also paid $50,000 in bonds on account of their bid.

At the August term of said court there was formed an issue, and a jury was impaneled to try the question as to the amount of damages in each of said several common law cases, and the judgments rendered were as follows:

| Names. | Amount of 1st judgment. | Amount of 2d judgment. |
|---|---|---|
| Peter Heiss | $8,875 | $4,500 |
| Hugo Prill | 8,000 | 1,280 |
| Fred Buehler | 2,700 | 300 |
| Matilda Loyer | 1,500 | 800 |
| Gottfried Zoeller | 1,250 | 445 |
| Bertha Buehler, Amelia Ackerman, Clara & Th. Jahn. | 3,000 | 475 |
| Anna Eis and Matilda Baumer | 2,400 | 850 |
| Fred Sanders and Anna Schuchmann | 1,750 | 455 |
| A. Vortride, administrator of, etc | 5,000 | 500 |
| Barbara Widman, administratrix | 500 | 230 |
| Isaac S. Coe | 8,000 | 1,190 |
| Charles Kaiser | 400 | 180 |
| Peter Heiss & Son | 9,000 | Verdict for def't |

—Making the sum of the verdict, on the trial under an issue directed by the court, $11,205, instead of $52,375, as at first rendered. Subsequently the master made his report, showing that the purchasers had not paid the sum of $55,000 in cash, as provided for by the terms of the order of sale, but had tendered the sum of $11,205 in lieu thereof, and had tendered the balance of the bid in bonds of the railway company,

The court approved the verdicts of the juries, and directed the master to accept the tender of the purchasers and deliver a deed to the purchasers, and that the said sum in cash be distributed in payment and satisfaction of the said several judgments. A motion was made in each case to set aside the verdict of the jury, and for a new trial, but the court overruled the same, and complainants in the cross-bill excepted. In the case of Prill it appeared that he purchased the real estate the injury to which he claimed the right to recover for, after the railroad was constructed and in operation on Chestnut street, and the court excluded this part of the case from the jury. His recovery was for alleged interruption of his business as a hotel and saloon-keeper, and to his leasehold interest in property on that street. Fred Buehler was limited also to damages resulting from injury to his business as a hardware merchant while tenant on the same street, and to depreciation of his leasehold interest in the property in which he did business, he having purchased real estate only in 1886.

Various questions made on the trial as to the admission and refusal to admit evidence, etc., and which are assigned for error, are noticed in the opinion.

Messrs. MORRISON & WHITLOCK, for the appellants:

Equity will enjoin a railway corporation from taking possession of land for a right of way until the right has been acquired. Until the corporation has complied with the law, any entry upon the land would be an unlawful act, its effect being to oust the owner without first paying the just compensation to which he is entitled before his property can be taken. It is upon this ground that equity affords a remedy by injunction. The entry would be in the nature of a continuing trespass. High on Injunctions, secs. 391-393, and cases in notes 1 and 3; *Railroad Co.* v. *Telegraph Co.* 10 Am. and Eng. Ry. Cases, 387, and cases in note.

The entry upon Chestnut street in Centralia was lawful. Under the charter the fee of the street was in the city, and it had the power to grant the right of way. It was not necessary to obtain the consent of the abutting property owners in order to acquire that right from the city. *Ferry Co.* v. *Railroad Co.* 107 Ill. 450.

By the admitted facts, the track was laid in a skillful manner, and so operated. The use of the street in such manner was rightful, in law. *Railroad Co.* v. *Loeb,* 118 Ill. 203.

Whatever damages the complainants in the original bill have sustained were consequential, and arise from the lawful use of Chestnut street, adjoining their property, and in which street the complainants in the original bill have no other interest than the right to use the same in common with all other persons. *Stetson* v. *Railroad Co.* 75 Ill. 76.

But it has been well settled in this State that courts of equity will not restrain, by injunction, the corporation from occupying a street of a city for railroad purposes at the suit of an abutting property owner, where the fee of the street is in the city, and the right to so occupy has been duly granted by the proper city authorities, as is the case here. *Stetson* v. *Railroad Co.* 75 Ill. 76; *Patterson* v. *Railroad Co.* id. 588; *Schertz* v. *Railroad Co.* 84 id. 135.

Prior to the adoption of the present constitution the rule was, that consequential damages were not within the meaning of the provision of the constitution providing that private property should not be taken for public use without just compensation. For that reason cases like this were held not to be within the meaning of the provision, and no remedy was found for such a loss. *Stone* v. *Railway Co.* 68 Ill. 394; *Rigney* v. *Chicago,* 102 id. 64.

Even if appellees, under the constitution, had a lien upon the railroad property for any damages incidentally sustained, they have waived the same, as against the holders of the mortgage securities. The neglect to enforce the lien for so

long a time amounts to a waiver.    *Reichert* v. *Railroad Co.* 38 Am. and Eng. Ry. Cases, 453 ; 2 Wood on Railway Law, 792 ; *Duke of Leeds* v. *Earl of Amherst,* 2 Phil. 117 ; *McAuley* v. *Railway Co.* 33 Vt. 321 ; *Killell* v. *Railroad Co.* 56 id. 109 ; *Goodwin* v. *Railroad Co.* 18 Ohio St. 169.

That a constitutional right may be waived, like any other, is settled beyond question.    Sedgwick on Const. Law, 111 ; *People* v. *Murry,* 5 Hill, 472 ; *Lee* v. *Tillotson,* 24 Wend. 337 ; *Baker* v. *Brennan,* 6 Hill, 47 ; *Railroad Co.* v. *Hock,* 118 Ill. 592 ; Cooley's Const. Lim. 181, 182.

The grounds for applying the proceeds of the sale of mortgaged railroad property to the payment of debts for labor and supplies, are fully stated in *Fosdick* v. *Schell,* 99 U. S. 235. See, also, *Miltenberger* v. *Railway Co.* 106 U. S. 286 ; *Trust Co.* v. *Souther,* 107 id. 591 ; *Trust Co.* v. *Railway Co.* 117 id. 434 ; 11 Am. and Eng. Ry. Cases, 707 ; *Trust Co.* v. *Shepard,* 127 U. S. 494 ; *Sage* v. *Railroad Co.* 125 id. 361 ; *Trust Co.* v. *Morrison,* id. 521 ; *Burnham* v. *Bowen,* 111 id. 776.

The mortgage made to Dunn and Butler was operative upon all the property of the railway company acquired after the execution of the same, and so was a valid and binding lien before the railroad was constructed upon Chestnut street. *Thompson* v. *Railroad Co.* 103 Ill. 187 ; 1 Jones on Mortgages, 152, 153 ; Jones on Railroad Securities, secs. 121-153.

This court has held that a party asking the aid of a court of equity will be denied relief where it appears there has been delay in seeking relief, even though the period fixed by the Statute of Limitations at law has not expired, if it appears the rights of third parties have in the meantime intervened. *Steiger* v. *Bent,* 111 Ill. 340 ; *Barbour* v. *Mortgage Co.* 102 id. 121.

For the effect of delay on the relief in equity, see *Walker* v. *Douglass,* 70 Ill. 452.

When the owner of property uses his influence, and induces a railway company to locate its road upon an adjacent street,

he will be estopped from claiming damages occasioned by the location of the road. *Railroad Co.* v. *Allen,* 39 Ill. 205 ; *Railroad Co.* v. *Hunter,* 50 id. 325 ; *Railroad Co.* v. *Morgan,* 72 id. 157 ; *Railway Co.* v. *Hoag,* 90 id. 350 ; Lewis on Eminent Domain.

Appellants were not bound by the original judgments, because they were not parties thereto. Bigelow on Estoppel, 59 ; *Hopkins* v. *McCann,* 19 Ill. 113 ; *Water Power Co.* v. *Webster,* 26 id. 234 ; *Marshall* v. *Rose,* 86 id. 376.

The action did not survive to the personal representatives of the deceased plaintiffs in the action at law. Rev. Stat. chap. 1, sec. 10 ; chap. 3, sec. 123 ; *Knox* v. *Sterling,* 73 Ill. 214 ; *Foltz* v. *Prouse,* 17 id. 487 ; *Green* v. *Massie,* 13 id. 364 ; *Guyer* v. *Wookey,* 18 Ill. 536.

Mr. T. E. MERRITT, and Messrs. CASEY & DWIGHT, for the appellees :

Appellees, under the constitution, are entitled to compensation for the damage done to their property by the construction and operation of the railroad. Const. of 1870, art. 2, sec. 13 ; *Hoag* v. *Switzer,* 61 Ill. 294 ; *Stone* v. *Railroad Co.* 68 id. 394 ; *Railroad Co.* v. *Francis,* 70 id. 238 ; *Eberhart* v. *Railroad Co.* id. 347 ; *Rigney* v. *Chicago,* 102 id. 64 ; *Railroad Co.* v. *Ayres,* 106 id. 511.

As to property taken, until the compensation is paid there is no right to enter upon the premises. It is the payment of the money found by the jury, and not the order of the court, that confers the right of way. *Railway Co.* v. *Teters,* 68 Ill. 144 ; *Chicago* v. *Barbian,* 80 id. 482 ; *Schreiber* v. *Railway Co.* 115 id. 340 ; *Railroad Co.* v. *Gates,* 120 id. 86 ; *Railroad Co.* v. *Hopkins,* 90 id. 316 ; *South Park Comrs.* v. *Dunlevy,* 91 id. 49 ; *Cook* v. *South Park Comrs.* 61 id. 115 ; *People* v. *Williams,* 51 id. 63.

Under the Statute of Eminent Domain the owner's right to just compensation is preserved to him before his property is

taken.  Because there is no remedy under that statute to the person whose property is damaged, will not deprive him of the benefits guaranteed to him by the constitution.  He may bring a common law action.  *Elgin* v. *Eaton*, 83 Ill. 535; *Stetson* v. *Railway Co.* 75 id. 74; *Railway Co.* v. *Schertz*, 84 id. 135.

No act of the railroad company, or of the holders of bonds, as to property taken, can deprive the owner of the property of his rights.  *Kendall* v. *Railroad Co.* 55 Vt. 438; *Drury* v. *Railroad Co.* 127 Mass. 571.

The same rule will apply with equal force, under our constitution, as to property damaged.

The land owner has a lien on the land for unpaid compensation, which is good even against a vendee of the company making the entry, or against the mortgagees or lessee of such company.  *Holbert* v. *Railroad Co.* 45 Iowa, 23; *Water Co.* v. *Moyer*, 99 Pa. St. 615; *Hibbs* v. *Railroad Co.* 39 Iowa, 340; *White* v. *Railroad Co.* 7 Heisk. 518; *Gilman* v. *Railroad Co.* 40 Wis. 643.

The constitution makes the payment of just compensation a condition precedent, without which the title of the owner of the land, or any easement therein, is not divested or affected. *Railroad Co.* v. *Jones*, 68 Ala. 48.

Under the provisions of the constitution of the United States and of the State of Kansas the same rule is announced. *Pryzbylowicz* v. *Railroad Co.* 3 McCrary, 586.

A railway company can not escape the performance of any duty or obligation imposed by its charter or the general law of the State, by a voluntary surrender of its road into the hands of lessees.  *Balsley* v. *Railroad Co.* 119 Ill. 68.

Persons buying these bonds are charged with notice of the constitution of the State of Illinois and its requirements.  They are bound to know that the railroad company must do all the law requires.  As against these appellees they are not and can not be innocent purchasers.

As to what is property, in the sense used in the constitution, which secures to the owner "just compensation," see *Stahl* v. *Webster*, 11 Ill. 511; *Railway Co.* v. *Railway Co.* 87 id. 324; *Rigney* v. *Chicago*, 102 id. 77.

The right of action accrues when the railroad is put in operation. *Railroad Co.* v. *Loeb*, 118 Ill. 203; *Railway Co.* v. *McDougall*, 118 id. 229; *Railroad Co.* v. *McAuley*, 121 id. 160.

A right of action for a wrongful act resulting in injury to land can not be transferred to another by an instrument in writing for that purpose, or by conveying the land. Such a right of action is not appurtenant to the land. It is a personal right, and is not transferable. *Railroad Co.* v. *Maher*, 91 Ill. 312.

When a right of action has once accrued by the location and construction of a railroad, and the owner of the land thereby injured or damaged conveys it to another, the latter can maintain no action for any damages he may subsequently sustain which could have been anticipated and allowed as prospective damages in any suit which his grantor might have brought in his own name. *Railway Co.* v. *Wachter*, 123 Ill. 440.

The devisee of a deceased person can not maintain an action in his own name for a tort, or conversion of the property of the testator in his lifetime, but the suit must be brought in the name of the executor or administrator. *Coal Co.* v. *Long*, 91 Ill. 617.

Under the statute the action survived to Barbara Widmann, administratrix of Philip Widmann, deceased. Starr & Curtis, chap. 3, sec. 123; *Railroad Co.* v. *O'Connor*, 19 Ill. App. 591.

We submit the following authorities as to the rule for determining the measure of damages: *Dupuis* v. *Railway Co.* 115 Ill. 97; *Railroad Co.* v. *Bowman*, 122 id. 595; *Railway Co.* v. *Railroad Co.* 112 id. 589; *DeBuol* v. *Railway Co.* 111 id. 499; *Brown* v. *Railroad Co.* 125 id. 600; *Kiernan* v. *Railway Co.* 123 id. 188; *Elgin* v. *Eaton*, 83 id. 535; *Railroad Co.* v. *Hall*, 90 id. 42; *Railroad Co.* v. *Scott*, 132 id. 429.

Mr. Henry C. Goodnow, for the appellees Heiss, Coe and Kizer:

The constitution provides that private property shall not be taken or damaged for public use without just compensation.   Under this provision the damaging of contiguous property is held a taking.  *Rigney* v. *Chicago,* 102 Ill. 64; *Hooker* v. *Northampton Co.* 14 Conn. 146; *Crawford* v. *Delaware,* 7 Ohio, 459; *Pumpley* v. *Railway Co.* 13 Wall. 166; *Haynes* v. *Thomas,* 7 Ind. 38; 1 Redfield on Railways, (3d ed.) 309.

Compensation for property taken is a condition precedent to the taking.   *People ex rel.* v. *McRoberts,* 62 Ill. 38; *Railroad Co.* v. *Coppinger,* 66 id. 510; *Schreiber* v. *Railroad Co.* 115 id. 340; *Phillips* v. *South Park Comrs.* 119 id. 627; *Doe* v. *Banking Co.* 1 Kelley, 524; *Railway Co.* v. *Nesbit,* 10 How. 395; *Railroad Co.* v. *Jones,* 68 Ala. 48; 2 Wood on Railway Law, 815.

As the taking or damaging of contiguous property to a railroad adds so much to the road, giving it the privilege to operate the road notwithstanding such damages, we infer the damaged parties should have a lien on the railroad property for just compensation.   This being the case, appellees would have a prior lien to the mortgagees or bondholders.  Mills on Eminent Domain, 144.

A statutory lien is prior to a mortgage lien.   *Colehour* v. *Savings Institute,* 90 Ill. 153; *Kendall* v. *Railroad Co.* 55 Vt. 438; *Dewey* v. *Railroad Co.* 127 Mass. 571; 3 Wood on Railway Law, 1641; 37 Wis. 319.

The circuit court erred in permitting the bondholders to open up the judgments of appellees and to inquire as to the damages.  The defendant, Jacksonville Southeastern Railway Company, pleaded the general issue in each case, and a jury inquired as to the damages.

When the court has jurisdiction the validity of the judgments can not be attacked collaterally.  *Reid* v. *Morton,* 119 Ill. 123; *Kelly* v. *People,* 115 id. 586.

The record of a judgment is conclusive. *Roche* v. *Beldam,* 119 Ill. 320.

In order that the bondholders may attack these judgments they must show fraud in the judgment upon them, or that the property on which the judgments are a lien was insufficient to pay off both debts, and the pleadings must be such as to authorize this evidence. (*Walker* v. *Ray,* 111 Ill. 321.) There is no allegation in the pleadings that appellees' judgments were obtained fraudulently, or that the property of the Jacksonville Railway Company was insufficient to pay all the judgments and bonds.

The issue out of chancery to assess damages is advisory, and the chancellor could affirm the findings of the jury, or find to suit his own judgment. *Kelly* v. *Kelly,* 126 Ill. 555.

Mr. Justice Shope delivered the opinion of the Court:

The principal question presented in this case is, whether the judgments in favor of appellees, severally, were entitled to priority of payment out of the funds produced by the sale of the railroad in the foreclosure proceeding instituted by appellants, or was the lien of the mortgage of July 1, 1882, paramount, and entitled to priority of payment as against those judgments. The court below decreed that the judgments, aggregating $11,205, were entitled to priority, and directed the master to pay the same out of the proceeds of the sale.

The Jacksonville Southeastern Railway Company was organized under the laws of this State, to construct, build and operate a line of railway from the city of Jacksonville to the city of Centralia, in this State. It acquired title to an existing railway from Jacksonville to the town of Virden, and thereupon issued three hundred bonds, of $1000 each, and executed a first mortgage on the road from Jacksonville to Virden, and upon its projected line from Virden to Litchfield,

to secure the same.    Subsequently, on July 1, 1882, it executed the mortgage in question upon all of its line of road then constructed and thereafter to be built from Jacksonville to Centralia, to secure eleven hundred and twenty bonds, of $1000 each, the bonds held by appellants being parcel thereof. These bonds upon their face contained a condition that the trustees therein named, or their successors in trust, might enter upon and take possession of the mortgaged road if the interest provided for therein should remain due and unpaid for six months, or the taxes on the mortgaged property should remain unpaid six months after the same became due, and might declare the principal of the bonds due and payable. By the terms of the mortgage the bonds were to be issued as the work of construction progressed, at a rate not exceeding $10,000 for each mile of completed road.    The length of the proposed road was one hundred and ten miles.    The road was completed to the city of Centralia from Virden in October, 1883.    By ordinance of the city of Centralia, passed January 10, 1883, the railway company was authorized to lay its tracks upon and along Chestnut street in said city, which was done.    Appellees were owners, some in fee and others by leasehold interests, of lots abutting upon Chestnut street, each of whom, with others, claims that his abutting property was damaged, and, as to appellees Heiss, Prill and Buehler, also that their business then and theretofore carried on on said street was damaged.    In December, 1887, and January, 1888, suits were brought by appellees, severally, against the railroad company to recover damages therefor, which resulted in judgments for the plaintiffs.    Executions issued upon these judgments, and were returned *nulla bona*.    As will be seen from the preceding statement, these judgments were opened by the chancellor, at the instance of appellants, and such proceedings had as resulted in the several assessments, by a jury, of damages to the property of appellees, as shown by the decree.    The authority of the city to authorize the laying

of the railroad tracks in Chestnut street, and its use for railroad purposes, is not questioned.

The constitution of 1870, article 2, section 13, provides "that private property shall not be taken or damaged for public use without just compensation. Such compensation, when not made by the State, shall be ascertained by a jury, as shall be prescribed by law." It has, however, been repeatedly held that a railroad company acquiring the right to lay its tracks in the streets of a city is not required to institute condemnation proceedings in respect of damages which may accrue to owners of property abutting such streets, and where no part of the land of an abutting lot owner is entered upon or sought to be condemned for public use, the owner is not entitled to have proceedings instituted under the Eminent Domain law to ascertain what damage his property may sustain in consequence of the construction and operation of a railroad, (*Peoria and Rock Island Railway Co.* v. *Schertz,* 84 Ill. 135, *Stetson* v. *Chicago and Evanston Railroad Co.* 75 id. 74,) but the land owner is remitted to his action at law to recover his damages. The right to recover damages for injury to private property occasioned by the occupation of a public street by a railroad, or the taking of other property for the public use, is secured to the property owner by the provision of the constitution quoted. (*Chicago and Western Indiana Railroad Co.* v. *Ayres,* 106 Ill. 511.) And the railroad company will be liable for all direct physical damages accruing from the construction and operation of such railroad, to such contiguous or abutting owner. *Stone* v. *Fairbury, Pontiac and Northwestern Railroad Co.* 68 Ill. 394; *Eberhart* v. *Chicago, Milwaukee and St. Paul Railroad Co.* 70 id. 347.

We said in the *Loeb case,* (118 Ill. 203): "The just compensation to be made for damages to land was, in our opinion, intended as an indemnity, not for successive, constantly accruing damages recoverable as they may afterwards be suffered, but for all the damages the land owner may suffer from all

the future consequences of the careful and prudent operation of a railroad, it being the immediate damage done to the land owner's estate by changing its permanent condition and impairing its present value. The action for damages may be regarded as in the nature of one kind of condemnation proceedings." And we there held, that under the clause of the constitution of 1870 restrictive of the exercise of the power of eminent domain, in that private property shall not be taken or damaged for public use without just compensation, the proceedings for the recovery of damages for property damaged but not taken should be similarly regarded as the provision in regard to the taking of property, where there is but one proceeding, and an assessment of compensation for damages once for all; and that in cases where no land was taken or appropriated there should be but one proceeding for recovery of damages, "in which there should be recovery for the entire damage, past, present and future."

The constitution of 1848 provided only that private property should not be taken for public use without just compensation, and it was held that damages were not recoverable for injury to private property not touched by the public improvement. To obviate this supposed defect, the constitution of 1870 provided that private property should not be taken *or damaged* for public use without just compensation. Property is neither to be taken nor damaged without just compensation. Both provisions are of equal importance, and are alike restrictions upon the exercise of the power of eminent domain. It is true, when compensation is not to be made by the State it is to be ascertained by a jury as may be prescribed by law. But it can not be important that the legislature has failed to provide, in the Eminent Domain act, for the assessment of such damages. The property owner is not thereby left remediless, but may nevertheless have his action at common law, and thereby have his compensation "ascertained by a jury," as required by the constitution. It became necessary for the

legislature, by the Eminent Domain act, to provide for the right of entry upon and possession of the private property of the citizen, and, as a necessary incident, to prescribe the mode of ascertainment of compensation in cases where the property was to be actually appropriated to the public use. But no such necessity existed when there was not a physical taking or appropriation, for the reason that the common law furnished ample means for the ascertainment of the damages done the property not so entered upon or taken.

The right of eminent domain is an essential attribute of sovereignty, inherent in every independent government, and to be exercised in the discretion of the sovereign power, to promote the general welfare of the people. The right of the citizen to own, possess and enjoy his property must necessarily give way to the right of the State to appropriate it to public uses, when, in the judgment of the sovereign power, public interest will be promoted. It is universally conceded that railroads are *quasi* public corporations, and that the taking or damaging of private property for their construction and maintenance is a public use, within the meaning of the constitution. The sovereign power of the State has seen proper, for wise purposes and in the interest of natural justice, to place an absolute restriction upon the exercise of the right either to take or damage private property, that just compensation for the taking or damaging shall be paid. It has been uniformly held in this country, that the compensation need not be paid before the taking,—it is sufficient that provision be made for compensation afterwards, provided the payment be made certain. So enactments providing for taking possession of property sought to be condemned for public use, upon giving bond, etc., have been held valid. The rule is stated by Chancellor Walworth, (18 Wend. 9,) that the compensation must be either ascertained and paid before the property is appropriated, or an appropriate remedy must be provided, and upon an adequate fund, that it may be reached by the owner through

the medium of the courts of justice. And in *Gardner* v. *Village of Newberg*, 2 Johns. Ch. 162, Chancellor KENT held, that if, in any case, the government proceeded without taking these preliminary steps, their agents and officers may and should be restrained by injunction. Potter's Dwarris, 392.

It will be unnecessary to pursue this branch of the subject, for the reason that this court is probably committed to the doctrine that injunction will not lie at the suit of the abutting property owner when the entry upon and occupation of the street by a railroad is by the authority of the municipal agency invested with the control of such street. *Stetson* v. *Chicago and Evanston Railroad Co. supra; Patterson* v. *Chicago, Danville and Vincennes Railroad Co.* 75 Ill. 588; *Chicago, Burlington and Quincy Railroad Co.* v. *McGinnis*, 79 id. 269; *Truesdale* v. *Peoria Grape Sugar Co.* 101 id. 564; *Peoria and Rock Island Railroad Co.* v. *Schertz, supra.*

It was held in these cases, that the provisions of the Eminent Domain act providing for the recovery of compensation for property damaged but not taken, applied to cases where, a portion of the land having been taken, damages resulted in consequence thereof to the residue of the land of the same proprietor, but the damages resulting to abutting or adjacent lands in consequence of the construction and operation of a railroad upon its own land or upon the lands of another was not within its contemplation, and that the railroad company, having the right to enter upon its own land or to enter upon the street by license, its act of entry, and of constructing thereon its road, was not unlawful, and hence, there being a remedy at law in an action for the damages occasioned, there was no ground for the interference of a court of equity. After citing numerous English authorities it is said in the *Stetson case, supra*, "the reason given is, the impracticability in many cases of knowing whether damage will be sustained or not, and of measuring it if it were certain," until after the completion and operation of the road; and it was further said, that

the company was not bound to make compensation for expected damages before it entered upon the work it had a lawful right to perform. "The party will be left to his action. When he has settled his right to damages, and ascertained the measure in an action at law, if any reason exists why he can not have execution of the same, equity will assist him, but not before." *Dunning* v. *City of Aurora*, 40 Ill. 480; *Bliss* v. *Kennedy*, 43 id. 67.

Without pausing to note further the rulings in this regard, or to express our approval or disapproval of the same, it will be seen that the right to recover compensation for such consequential damages as may accrue to abutting property, by the appropriate remedy at law, is clearly recognized, and that the want of power of a court of equity to interfere by injunction to restrain the supposed damaging of such property is predicated upon the impracticability of its ascertainment before the damage has been occasioned, and also a clear recognition of the power of a court of equity to interpose, by way of execution, after the exhaustion of the legal remedy. Many cases are to be found in the books where the question has arisen as to the right of compensation to the land owner where his land has been taken and appropriated, and between the owner and incumbrancers or alienees of the railroad and its franchise and property, and the uniform holding has been, unless the owner has done some act amounting to a waiver of his right to compensation, or by which he is estopped from asserting it, that his right to compensation remains unaffected by the alienation. In many of the cases the right is placed upon the ground that, the compensation not having been paid, the title to the land sought to be taken remains in the original proprietor, and that ejectment will lie at his suit to recover the land, or, where the amount of compensation has been ascertained by condemnation proceedings, it may be treated as a forced sale of the land, and a lien in the nature of a vendor's lien enforced against the property. The right to com-

pensation, before the owner can be deprived of his property, being secured by constitutional provision, such title can not be divested, except upon payment of the compensation, (or its equivalent,) by any act of the legislature or of the railroad company, and an alienee or incumbrancer thereof will take *cum onere* the right of the owner to compensation, and is not, therefore, an innocent purchaser. *Rio Grande Railroad Co.* v. *Ortoz,* 75 Texas, 602; *Howe* v. *Harding,* 76 id. 17; *Borough of Easton,* 47 Pa. St. 255; *Lycoming Gas and Water Co.* v. *Moyer,* 99 id. 615; *Western Pennsylvania Railroad Co.* v. *Johnson,* 59 id. 290; *Drury* v. *Midland Railway Co.* 127 Mass. 571; *Mims* v. *Macon Railroad Co.* 3 Ga. 333; *White* v. *Nashville Railroad Co.* 7 Heisk. 518; *Lake Erie Railway Co.* v. *Griffin,* 107 Ind. 464; *Pfeifer* v. *Sheboygan Railroad Co.* 18 Wis. 164; 28 id. 317; *Adams* v. *Railroad Co.* 57 Vt. 240. A careful study of these and like cases will disclose with what care and pertinacity the courts have sought to protect the constitutional right of the citizen against encroachments upon his property without indemnity against loss, by reason of the appropriation of his property to a public use.

It is said in this case, however, that the doctrine of these cases does not apply, for the reason that the title of appellees to their property is unaffected, and it is not sought to interfere with their right of possession or occupancy, and therefore, no right in their property being sought by the railroad, no lien can be declared in their favor for the consequential damages resulting to such property by the building and operation of the railroad. It must be conceded that the right of appellees, here, can not be predicated upon any supposed sale of their land, so that, by analogy, a vendor's lien might be declared in their favor. Nevertheless, there is a forced deprivation of property or damaging of property of the abutting owners without their consent, by reason of the appropriation of the street to the particular public use, and there is, therefore, in every just sense, a taking of the private property of the abutting

owner to the extent to which it is thus damaged. Property consists, not of the physical thing of which it is predicated, but in the dominion that is rightfully and lawfully obtained over it,—the right to its use, enjoyment and disposition. If a railroad company, by building its road upon the street fronting upon a lot, reduces the value thereof from $5000 to $3000, it has as certainly taken from the owner $2000 of his property as if it had occupied a strip of his land of that value,— and this seems to be the current of later authority. (Lewis on Eminent Domain, secs. 53-59, and cases cited; *Rigney* v. *City of Chicago*, 102 Ill. 64.) But for the consent of the city, a mere instrumentality of government, to the occupation of this street by the railroad company, it must have acquired such right under the Eminent Domain laws of this State, and it can not affect the right of the abutting owners to compensation, that the street is appropriated to the public use by the railroad by consent of the government, instead of having been acquired by another exercise of its sovereign power.

It is not, however, as we have already seen, an open question in this State, that adjacent lot owners may recover damage occasioned by the building and maintaining of a railroad in the streets of a city by and with the consent of the municipal authorities,—that is, that damages not common to property in general, resulting to abutting property from the appropriation of the street by the railroad, is damaging private property within the purview of the constitutional provision before quoted. (*Rigney* v. *City of Chicago, supra; Chicago and Eastern Illinois Railroad Co.* v. *Loeb, supra.*) And private property is, by the constitutional guaranty, secured against being thus damaged for such public use without compensation. Therefore to hold that a railroad may occupy the streets of a city, and thereby damage the private property of abutting or adjacent lot owners, and by reason of alienation or its insolvency may continue the occupancy and infliction of the injury without indemnifying such owner, is to render the constitu-

tional provision nugatory, and the safeguards specifically in-
tended by the people to be thrown around the citizen in the
protection of the right of private property is rendered of no
avail. It may be, as we have before seen it has been held,
that the citizen is remediless until the damage has actually
occurred, and by appropriate remedy he has determined the
extent and amount thereof; but when the damages are ascer-
tained in the mode provided by law, the right of the lot owner
to the payment of the same, as compensation, is guaranteed
to him by the constitution as a condition to the continued
appropriation of the street to the public use, whereby the in-
jury to his private property is inflicted.

As we have seen, it is not in the power of the railroad, by
alienation or otherwise, to defeat this constitutional guaranty,
and the alienee, purchaser or successor will be required to
take notice of the provisions restricting the power to take or
damage private property for public use, and be held to take
subject to the burthen cast upon the railroad by, through or
under which the interest is acquired. It by no means follows,
as seems to have been supposed in some of the cases, that a
right of action would exist against the new company, who
might, as successor to the original railroad company, become
possessed of the franchise and property; but when a mort-
gagee or a successor company insists upon a continuation of
the use, or where there is an appropriation of that part of the
railroad whereby the damage has been occasioned, the right
of the lot owner to compensation out of the *res* is absolute.

It is said, however, that appellants, mortgage bondholders,
are innocent purchasers of the bonds, without notice of any
equities in appellees,—that the mortgage by which the bonds
purchased by them are secured, is prior, both in date of execu-
tion and recording, to the judgments of appellees, and to the ac-
cruing of the damages for which the judgments were rendered.
It is true, as we have seen, that the mortgage was executed
July 1, 1882, and that the road was not constructed along

the street in question until October, 1883, and that the damage suits were not brought until in 1887, and judgments not recovered until August, 1888. If these bondholders were not required to take notice of the rights of appellees, and it is necessary to bring notice home to them, evidence thereof is not wanting in this record. They were notified upon the face of the bond and mortgage that the bonds were issued upon an unfinished line of road, and that they were to be issued at the rate of $10,000 a mile, as the projected line of railroad was completed. The mortgage executed to secure these bonds was made to cover, not only the small portion of the road then constructed, but .the franchise and property of the railroad company then owned or thereafter to be acquired, and the projected line of road as it might be completed through to the city of Centralia. It was apparent on the face of the security that the railroad and property of the company then in existence were not intended as the sole security for these bonds, but the security was to be appreciated and perfected by the acts of the railroad company in the building and completion of the railroad. Every person buying these bonds must be presumed to have known that the right of way must be acquired in some of the recognized modes known to the law, and that when the road was built through cities, damages might be thereby occasioned. They were bound to take notice of the provisions of the constitution of the State, and of the rights of all persons whose property was taken or damaged in the completion of this public work, to just compensation for such taking or damaging. It is apparent, therefore, that in respect of priority over the judgments of appellees, appellants are in no better condition than they would have been had the mortgage been subsequent to the accruing of the damages or the rendition of the judgments. It can no more be said that the fact that the bonds were executed at a date prior to the building of the road will entitle them to priority against persons whose property was damaged for the

public use, than it could be that they are entitled to priority as against persons whose lands may have been taken and appropriated to the public use,—and in the latter case it will not be contended that the mortgage would have priority. The railroad company was, in a sense, agent of the bondholders to perfect their security, and the latter must be held bound by the acts of the company in respect of the completion of the projected road, so far, at least, as such acts can be held to have been clearly within the contemplation of the parties in appreciating and perfecting the security.

By the original bill it was sought to subject the *corpus* of the railroad to the satisfaction of these judgments for damages. The bondholders and trustees having been made parties, answered, setting up their bonds and mortgage, the bonds having been declared due, as might be rightfully done, for the non-payment of the interest, filed their cross-bill to foreclose the mortgage, and insisting upon the priority of the mortgage over the judgments. The foreclosure was decreed, and the question sharply presented was, as to the right of appellees to satisfaction of their judgments out of the proceeds of the sale of the property. It is apparent that appellants were seeking to avail of the security as it had been perfected by the railroad company. This, appellants could not do without incurring the obligation to discharge the liability of the railroad to appellees. It was necessary in the completion of the road, in the exercise of the discretion committed to the railroad company, to procure the right of way in Chestnut street, which was done, and the road constructed therein. The road thus constructed formed parcel of the security which appellants were seeking to avail of. Before they could do this, as we have seen, the railroad company was required to pay the damages occasioned to appellees by the building of the railroad and the continued use of the street for that particular public use, which was guaranteed to appellees by the organic law of the land. It is not necessary, as seems to be supposed, that

we should hold that a lien was created by the constitutional provision for the damages to abutting property. It is sufficient that appellees were possessed of superior equities, and entitled to be first paid out of the proceeds of the sale of the property. The right to the continued use and enjoyment of the railroad upon Chestnut street, and its availability, therefore, as security to the bondholders, depended upon the payment of compensation to appellees, as ascertained by law. We therefore hold that the court did not err in decreeing that the damage to abutting property owners, appellees, should have priority of payment out of the proceeds of the sale of the railroad under the decree of foreclosure. .

There are some minor contentions which we deem it necessary to notice. It is insisted by appellants that the judgment in favor of Vortride, administrator of the estate of Minnie Vortride, deceased, is erroneous, in that the right of action survived to the heir, and not to the administrator. The suit was originally brought by Minnie Vortride, as owner of the abutting property damaged, and she having died pending the suit, her administrator was substituted as party plaintiff; and the same question is raised in respect of the judgment in favor of Barbara Widmann, administratrix of the estate of Phillip Widmann, deceased. It is conceded that the cause of action accrued during the lifetime of the decedent owners, and the question is, to whom did the action survive? As we have before seen, the recovery in this class of actions, where the structure from which the injury flows is permanent in its character, and the damages therefore permanent, should and may be for all damages arising therefrom, past, present and prospective. It was said in *Ohio and Mississippi Railway Co.* v. *Wachter*, 123 Ill. 440, that the decisions of this court go to the length of holding "that all special damages, present and prospective, to the owners of lands, resulting or to result from properly constructing, maintaining and operating a railroad under the laws of this State, constitute, as to such land owner,

5—141 ILL.

one single, indivisible cause of action, which may be enforced under the Eminent Domain act, or any other appropriate form of action." It is also there held, that when, after such right of action has once accrued, the land is conveyed to another, the latter can maintain no action for damages which could have been anticipated and allowed as prospective damages in a suit which the grantor might have brought. The right of action accrued in this case when the railroad was built and put in operation. (*Chicago and Eastern Illinois Railroad Co.* v. *Loeb, supra; Wabash, St. Louis and Pacific Railway Co.* v. *McDougall,* 118 Ill. 229; *Chicago and Evanston Railroad Co.* v. *McAuley,* 121 id. 160.) And it does not appear, from the record, that any element of damage or depreciation in value of the property entered into the judgments, other than that for which the right of recovery existed in the lifetime of the owners. The right of action was then a personal right, unassignable by conveyance of the land, and it could be enforced by the owner or his personal representatives, only. (1 Chitty's Pl. 177.) It would not pass with the land to his grantee, devisee or heir, and, surviving under the statute, the suits were properly prosecuted in the name of the personal representative of the deceased owner.

It is next insisted, the court erred in instructing the juries called to assess appellees' damages, under the order of court, opening the judgment, and providing for the trial of the issues of fact as to such damages. It is sufficient to say that, taking the series of instructions together, the law was given in each case with substantial accuracy. No good purpose can be served by an extended discussion of the various points made. Moreover, the verdicts of the juries, while not perhaps advisory to the conscience of the chancellor, merely, as in ordinary submissions of issues of fact out of chancery, were nevertheless peculiarly under the control of the chancellor, and upon a consideration of the whole case he could reverse or set them

aside. If, therefore, upon consideration of the whole case, it is found that the verdicts were warranted by the proofs, error in instructions would not necessarily reverse the judgments. But as before said, we find no substantial error, either as to the law as given by the chancellor to the jury, or in the verdicts upon the evidence submitted.

The particular objection to the instructions, however, seems to present the question as to whether the recovery should be limited to the damages accruing at the time of the completion of the road or within a reasonable time thereafter, or whether the jury would be at liberty to consider the actual depreciation from the location and operation of the road to the time of bringing the suits. As we have seen, the right of action accrued upon the happening of the injury, occasioned by the completion of the road, to recover not only present but prospective damages. It by no means follows that because the right of action then accrued it must then be enforced. The action may, under the statute, be brought at any time within five years from the accruing of the right, and the railroad company, or appellants, can not complain that the plaintiff has waited until his damages have become susceptible of absolute proof before bringing his action, instead of resorting to proof of prospective damages. The authorities are, that whenever the suit is brought, if within the Statute of Limitations, proof may be made of the permanent damages to the property, and the recovery being once for all, may include all damages flowing from the location and ordinarily skillful operation of the road.

It is also said that the court erred in instructing the jury as to the measure of damages to the leasehold interest and business of appellee Buehler. The court instructed the jury, at the instance of appellants, in respect of the loss to his business, that "the measure of his recovery is limited to the loss of probable profits of his business, if any shown by the evidence,

from the time of the construction of the railroad track on Chestnut street, and its operation, and such time as the plaintiff might, in the opinion of the jury, from the evidence, by the use of reasonable diligence, have procured another place of business equally eligible for the transaction of business of the kind he was engaged in, including a reasonable time for removal to the same." This instruction, it is conceded, lays down the correct rule. It is, however, said, that the instructions given for appellees were in conflict with this instruction. We have carefully examined the instructions, and there is nothing that, in our judgment, conflicts with the principle announced in the instruction quoted, or to indicate that the jury did not follow it in considering the evidence and making their finding. Other minor objections were insisted upon, but, as before said, we find no prejudicial error.

It is next insisted that appellee Heiss is estopped from claiming damages to his property by reason of the location and operation of the railroad in Chestnut street, because it was thus located, as it is claimed, by his invitation. The rule as laid down by Mr. Lewis (Eminent Domain, sec. 120,) is: "Where the owner of property urges or induces a railroad company to locate its road upon the adjacent street, he will, after the invitation has been acted upon, be estopped from claiming damages or enjoining the operation of the road." And the same principle has found recognition by this court in *Illinois Central Railroad Co.* v. *Allen*, 39 Ill. 205, and *Toledo, Wabash and Western Railway Co.* v. *Hunter*, 50 id. 325. It appears that Heiss attended meetings of citizens called for the purpose of devising ways and means to procure the building of the road to Centralia, and it is shown by Huisseller, a member of the city council, that his recollection is that Heiss asked him to vote for the ordinance granting the right to the railroad company to locate their railroad on Chestnut street, and that afterwards Heiss & Son, of which firm appellee was a member,

subscribed $100 toward the cost of building a depot at Centralia, a fund having been raised therefor by the citizens as an inducement to build the railroad to Centralia. In respect of the latter, it is clear that it had nothing to do with the location of the road on the particular street in question. The line had been located for a year before that time, to Centralia. Moreover, Heiss & Son, who thus subscribed, are allowed nothing by the decree. If it be regarded as true that Heiss urged the member of the city council to vote for the ordinance, it does not appear that his vote was necessary to its passage, or that the ordinance would not have been passed but for his action. We are of opinion that it can not be said that the railroad company was induced to locate its road upon Chestnut street by the invitation of Heiss. To create the estoppel there must be some affirmative act by the person sought to be estopped, in reliance upon which the company has acted to its prejudice.

It was not error for the court to open the judgments and require a re-assessment of the damages by a jury. The original judgments had been entered by default against the railroad company, only. If appellants were liable, or the property in their hands liable to be subjected to damages which had accrued to appellees, it was only for damages actually sustained, and as to such damages appellants were not bound by the original judgments.

We find no error in this record for which the decree should be reversed, and it is accordingly affirmed.

*Decree affirmed.*