No. 18,739.

ALBERT A. TROCON et al., Partners, etc., *Appellees*, v.
THE SCOTT CITY NORTHERN RAILROAD COMPANY
et al., *Appellants*, and E. A. TENNIS et al., *Appellees*.

SYLLABUS BY THE COURT.

1. RAILROAD CONSTRUCTION—*Priority of Liens—Equitable Adjustment.* Courts of equity in determining the priority of liens are governed largely by considerations of essential fairness and justice.

2. SAME—*Bridge Company Awarded First Lien on All Railroad Property.* The promoters of a projected railroad who also organized a construction company to build the road arranged with a trust company to take a mortgage on the projected line to secure certain bonds to be issued by the road, when organized, to the construction company, which was to build the road out of the money to be advanced from time to time as the work should progress. The relations of the promoters and the three companies mentioned were such that all were in some degree interested and substantially understood the contemplated enterprise. Pursuant to the arrangements indicated the railroad company contracted with the construction company to build and complete the road and the trust company furnished or procured the money to be furnished, and before the work was completed took charge of the disbursements. Two or three months after the contract was made for the building of the road the railroad company contracted with the bridge company to furnish the bridges for the entire line, the two promoters signing as guarantors, and such bridges were furnished and partially paid for. To recover the balance an action was brought against the railroad company, the construction company, the two promoters and the trust company, in which action the receivers of the railroad company appeared and were made parties. The court below rendered judgment against the railroad company and adjudged such balance a perferential claim or lien upon its property superior and paramount to the claims of the other defendants. *Held,* that such lien was properly adjudged.

3. RECEIVERS—*Entry of Appearance—Can Not Deny Jurisdiction.* The receivers having appeared and contested the matters at issue can not now be heard to deny the jurisdiction of

the court below to adjudge the preference, although such receivers were appointed by another court.

Appeal from Scott district court; ALBERT S. FOULKS, judge. Opinion filed March 7, 1914. Affirmed.

*Lee Monroe, James A. McClure, C. M. Monroe,* all of Topeka, and *W. S. Roark,* of Junction City, for the appellants.

*E. L. Scarritt, W. C. Scarritt, E. H. Jones,* and *C. M. Miller,* all of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

WEST, J.: The bridge company sued the railroad company, and its promoters, the construction company and the trust company, for a balance due for certain bridges constructed pursuant to a contract with the railroad company—the payment being guaranteed by McCue and Tennis, the promoters. Judgment was recovered against the railroad company only, but a first lien was declared against its property, and the railroad company and its receivers, who appeared and were made parties, and the trust company appeal, the contention being that the lien was improperly adjudged.

In the summer of 1910 the railroad company was organized for the purpose of building a line of road fifty-five miles in length, with possible extensions—the estimated cost being about $600,000. A mortgage for $1,500,000 was executed to the trust company as trustee to secure bonds of the same amount, $825,000 thereof to be issued and set apart for immediate use for the purpose of constructing the road—the remainder not to be issued until needed for extensions. A construction company having been organized, the railroad company issued to it the $825,000 of bonds, having contracted with it for the construction of the road. The trust company loaned or arranged for a loan

of $400,000 to the construction company, the $825,000 bonds being pledged for its payment. The amount of the loan was afterwards increased to $600,000. In December the railroad company contracted with the bridge company for the construction of the bridges, and they were completed and paid for except the balance involved herein. The trust company is the only appealing party vitally interested in the priority of liens, and it is contended that its relation to the enterprise is such that it can not fairly assert its lien to the exclusion of the bridge company's claim. The fact that the road was placed under a receivership indicates that some party will have to lose, and it is argued that the one which made the very existence of the road possible by spanning the streams which it crossed should not be thrust aside, while the party which directly or indirectly furnished the funds to be used in the construction of the road be given preference. The plaintiff contends that the trust company is not the lawful holder of the bonds as pledgee, because the transaction under which it obtained possession was void for usury, the theory being that the trust company really made the loan but used a certain bank as a cover to avoid usury. Also, that the relations of the various parties to the entire project were such as to entitle the bridge company to a preferential claim upon the assets of the road, which could not have existed complete without the bridges. We do not deem it necessary to go into the question of usury, as we consider the circumstances sufficient to warrant a decision without entering upon that branch of the case.

McCue and Tennis were president and vice president of the construction company. A letter bearing date September 1 was written by them to the trust company desiring it to procure a loan of $400,000 for the construction company, "the proceeds to be disbursed only for the purpose of paying for property, labor and material in and about the construction of said railway,

between the points named, and such other expenditures as you may approve," and agreeing to pay $60,000 for procuring such loan, and also agreeing that the railroad company should be immediately incorporated, and that it should contract with the construction company for the building of the road. The form of this letter was the joint production of the writers and the vice president of the trust company "putting on paper the agreement that we had worked out in the course of the discussion." In the mortgage or trust deed it was provided that bonds equal to $15,000 par value per mile should be set apart for immediate use "for the purpose of paying the sums heretofore expended by said Railroad Company, or to be hereafter expended by said Railroad Company, and for paying indebtedness heretofore incurred or to be hereinafter incurred by the Railroad Company, and for the purpose of acquiring and constructing the said line of railroad." The contract with the construction company provided that the latter was to construct the road in accordance with the plans and specifications, "the compensation for completing the road" to be as therein set forth, and that the trustee should certify and deliver to the construction company certain mortgage bonds for the purpose of securing the necessary funds for the work. The trust deed expressly covered all tracks and bridges then owned or to be thereafter acquired, and provided that in case of an extension the trust company should, upon a specified demand of the railroad company, certify and deliver to it bonds equal in amount to $15,000 a mile "of said Railroad Company completely constructed in every case with necessary bridges, sidings, turnouts, and stations and with necessary motive power and cars ready for operation." It is plain that the promoters of the railroad company, the construction company and the trust company were in a sense mutually if not jointly interested in the project of building the road. One of the receivers is or was an

Bridge Co. v. Railroad Co.

employee of the trust company, a former secretary of the trust company is or was treasurer of the railroad company, and the trust company's vice president appears to be the president of the railroad company. During the progress of the work of construction, and in October, 1911, the trust company sent a man to look after the disbursements, and a letter was written advising Mr. Tennis that this agent's duties would be to "examine and audit all disbursements and certify to this company that all payments made by us are for the purpose of paying for labor and materials actually used in the construction of the Railway, and for no other purposes. . . . The compensation of Mr. Knox will be at the rate of $150.00 per month and expenses, which by the direction of the Executive Committee, we will be obliged to charge to your account."

Aside from certain securities furnished by the promoters of the railroad company the entire project to organize, finance and construct the road was a paper affair, and was so known and understood by all concerned. It is no distortion of language or misuse of terms to say that the contract with the construction company and the mortgage executed to the trust company both called for and contemplated the building of a complete line of road, which, of course, would be impossible without including the necessary bridges. The trust company in agreeing to finance the project and in overseeing the expenditure of the money furnished knew and understood that whatever material went into the completed line of road would not only go to make up the principal security for the loan but that the latter was to be used for the very purpose of paying for such constituent material, and there is certainly an element of fairness in the suggestion that the trust company should see that such material be paid for before claiming a first lien upon the completed road. Had the project been a financial success so that the balance due the bridge company could have been paid without em-

barrassment to any of the parties concerned, the matter of liens or their priority would not be of importance. But we have for consideration a road bonded to pay for its construction, now insolvent, and it becomes a question of moment whether the party which furnished a material portion of the completed physical construction should be given preference.

Let it be said once for all that this is not a case of a *bona fide* purchaser for value before maturity of a mortgage upon railroad property. It is the case of a trustee in such instrument who instead of purchasing after the money had been furnished took the security in advance and furnished the money for the work as it was needed from time to time, knowing that such work could not be completed without bridges, and knowing also that the bridges were actually constructed and went into the completed line of road. The sum already paid on the contract price simply went to enhance the trust company's security while the amount remaining unpaid is in reality compensation for a small portion of the completed line which was to be constructed with the money furnished by the trust company according to the terms of the trust deed itself.

The defense correctly maintains that the bridge company did not provide in its contract for a lien and can claim none under any of our lien statutes. The real question is whether under the facts and circumstances shown equity will decree a preferential claim regardless of contract or statute. It is not strange that able counsel on both sides array decisions which might be said to substantiate the claims of each. But a close examination of the cases chiefly relied on discloses that in most of them the claims of *bona fide* purchasers before maturity were involved, or else implied contracts for liens were deemed to exist. Such is true of *Porter v. Pittsburg Bessemer Steel Co.*, 120 U. S. 649; *Dunham v. Railway Company*, 68 U. S. 254, 17 L. Ed. 584, and *Porter v. Pittsburg Steel Co.*, 122 U. S. 267, cited

by the defense, and *Perry v. Board of Missions, etc., of Albany,* 102 N. Y. 99, 6 N. E. 116; *Smith v. Smith,* (N. Y. Supr. Ct.) 51 Hun, 164, 4 N. Y. Supp. 669; *Westall v. Wood,* 212 Mass. 540, 99 N. E. 325, and *Society of Shakers v. Watson,* 68 Fed. 730, 15 C. C. A. 632, 163 U. S. 704, 16 Sup. Ct. Rep. 1206, 41 L. Ed. 313, cited by the plaintiffs.

The rule seems well established that a mortgage on present and after acquired railroad property is valid, and that such mortgage can not be impaired as to innocent holders for value by allowing as preferential the claims of those who contributed to the construction of the road after the execution and recording of the mortgage, and who have no claim to a lien either by statute or by contract.    But in none of the decisions to this effect are the facts similar to those now presented. It may be well to notice a few cases somewhat analogous in principle.    In *McIlhenny, Admr., and U. T. Co. v. Binz,* 80 Tex. 1, 13 S. W. 655, 26 Am. St. Rep. 704, it was said that as a general rule claims for construction unless for work done by order of court can not be allowed priority.    It was then said:

"But we think there may be construction claims which appeal as strongly to the conscience of a court of equity as the debts which are commonly known as operating expenses, and we further think we have such claims in those now under consideration."    (p. 15.)

There the mortgage covered the present and contemplated road, the bonds to be issued as the work progressed.    While the construction was going on a receiver was appointed and the operating receipts of the completed portion of the road were all expended under orders of the court, in paying interest on the bonds, and in making valuable and permanent improvements upon the property subject to the mortgage.    It was held that as the claims for "useful improvements" accrued within six months before the appointment of a receiver and the holders, being guilty of no laches,

were prevented by the action of the court from subjecting the property to the payment of their claims through the courts of law, it was the duty of the court to protect them in the final decree if there was on hand a fund which could be applied to the payment of their debt, and as the net earnings were not on hand, but had been applied to the interest on the mortgage and improvements which enhanced the value of the property, such net earnings should be restored from the proceeds of the sale of the mortgaged property and the claimants be given the prior claim thereto. In *Penn Mutual Life Ins. Co. et al. v. Heiss et al.*, 141 Ill. 35, 31 N. E. 138, 33 Am. St. Rep. 273, a railroad company gave a mortgage covering the entire line, the bonds to be issued as the road should be completed, and in constructing the same certain property was damaged without compensation being made. The bonds were sold in the market and the road was constructed over the land damaged in 1883. In 1887 suit was begun by the landowners, and the mortgage was set up as prior to the claims of the plaintiffs. It was held that the claims took precedence over the lien of the mortgage. It was said in the opinion (p. 63) that the bondholders were notified upon the face of the bonds and mortgage that the bonds were issued upon an unfinished line of road and were to be issued at the rate of $10,000 per mile as the line was completed, and that it was apparent on the face of the security that the property of the road then in existence was to be enhanced by the building and completion of the line which would necessarily require the procuring of a right of way. It was then said:

"It can no more be said that the fact that the bonds were executed at a date prior to the building of the road will entitle them to priority against persons whose property was damaged for the public use, than it could be that they are entitled to priority as against persons whose lands may have been taken and appropriated to the public use,—and in the latter case it will not be

contended that the mortgage would have priority. The railroad company was, in a sense, agent of the bondholders to perfect their security, and the latter must be held bound by the acts of the company in the respect of the completion of the projected road, so far, at least, as such acts can be held to have been clearly within the contemplation of the parties in appreciating and perfecting the security." (p. 63.)

In the well-known decision by Judge Caldwell in *Farmers' Loan and Trust Co. v. Kansas City, W. & N. W. R. Co.*, 53 Fed. 182, 41 C. R. R. §§ 615, 678, it was held that in appointing a receiver in a railroad foreclosure it was proper to require as a condition that the trustee of the bonds sought to be foreclosed should consent to the payment of certain claims, prior to the satisfaction of the bonds, for supplies furnished in the construction, extension, and equipment of the road. In this opinion a railroad company was likened to a ship, and it was suggested that the common-law rule as to the priority of liens had to some extent been and ought to be modified in analogy to the rules of maritime law. It was said:

"The labor, supplies, and materials are absolutely essential to the operation of the road, and, as a matter of fact, are in most cases furnished on its credit, in the same sense that the supplies of a ship are furnished on the credit of the ship. For these and other like reasons there has been a growing tendency among the courts and legislatures of this country to give such debts of a railroad company priority over the lien of a mortgage." (p. 190.)

The practical observation was made that "when it is known that a misapplication or fraudulent use of the proceeds of the bonds or the earnings of the road can not be visited upon the innocent persons whose labor and materials build the road or keep it in repair and operation, the mortgagee will see to it that the revenues of the company, derived from these and all other sources, are expended for legitimate purposes." (p.

191.) In *Kilpatrick v. Kansas City & B. R. Co.*, 38 Neb. 620, 57 N. W. 664, 41 Am. St. Rep. 741, an investment company had agreed to furnish the money necessary for the construction of the proposed railroad and take a mortgage on its anticipated property to secure its negotiable bonds. When the security was executed and delivered no property whatever had been acquired, and this was known to the investment company. The money was paid over to the promoters, officers of the proposed railroad company, who made contracts in the name of such company for labor and material used in the building of the road but failed to pay therefor. It was held that the investment company should be regarded as the promoter and builder of the railroad and that its mortgage security should be inferior to the statutory liens for labor and material furnished in its construction. In the opinion it was said that the recording of the mortgage created no rights or obligations; that had the mortgage recited at length the agreements between the investment company and the promoters and pledged the proposed road and franchise to the investment company as security for its advances for the construction of the road, the legal effect would have been the same.

Courts of equity in determining the priority of liens are governed largely by considerations of essential fairness and justice. The trust company undertook to finance a projected railroad on the express agreement that the funds were to be advanced and used as the construction progressed, and it was to have a first lien on the completed line which it was contemplated should be paid for out of the funds advanced. It was its right if not its duty to see, especially after taking charge of the disbursements, that the proceeds of the loan went to pay for the constituent material going into the road. It knew that the construction company which was borrowing the money had contracted to build and complete the road, and it might or should

have known what provision was being made to pay for the bridges which made the complete line a possibility. The fact that the two promoters of the railroad company contracted in the name of the former and their own names for the bridges hardly indicates that the railroad company was trying to donate the bridges to the construction company either for its own benefit or for the benefit of the security holder. The more natural and sensible inference is that they intended the bridges to be paid for out of the funds which were to pay for other portions of the road. Had the contract for the bridges been made in the name of the construction company no question could arise as to the rightful appropriation of sufficient proceeds of the loan to pay for them.

The court below having all the parties before it, and considering all the facts and circumstances, felt impelled to look through the forms of the transaction and reach the substance and to prefer the bridge company's claims to that of the trust company's, and in such ruling we find no error.

It is suggested that the court below had no jurisdiction to decree as it did, the property being in the hands of receivers appointed by another court. It appears, however, that the receivers voluntarily entered their appearance, having been appointed after this action was begun. There is nothing in the record indicating that they questioned the power of the court below to determine the matters before it, and while as a general rule the court appointing receivers may draw all controversies to itself, still when its receivers voluntarily appear in a sister court and litigate the question of priority as in this instance they should not be heard for the first time after an adverse decision to complain that the court was without jurisdiction. At any rate the in-

terest of the railroad company and its receivers in the matter of preference is much less substantial than that of the trust company.

The judgment is affirmed.