Lumber Co. v. Railroad Co.

No. 19,691.

THE S. H. CHATTEN LUMBER COMPANY, *Appellee,* v. THE
SCOTT CITY NORTHERN RAILROAD COMPANY et al., *Appel-
lants,* and THE KANSAS CONSTRUCTION & IRRIGATION COM-
PANY et al., *Appellees.*

### SYLLABUS BY THE COURT.

LIENS—*Ties for Construction of Railroad—Furnished by Lumber Com-
pany—No Lien on Railroad.* The record examined, and held, in view ·
of the special findings, not to support a judgment giving a lien upon a:
railroad for material furnished in its construction.

Appeal from Scott district court; ALBERT S. FOULKS, judge.
Opinion filed November 6, 1915. Modified.

*R. D. Armstrong,* of Scott City, *Lee Monroe, James A. Mc-
Clure,* and *C. M. Monroe,* all of Topeka, for the appellants.

*John M. Cleary,* of Kansas City, Mo., and *Albert Hoskinson,*
of Garden City, for appellee, The S. H. Chatten Lumber Com-
pany.

The opinion of the court was delivered by

MASON, J.: The principal question involved is whether the
trial court erred in allowing the plaintiff a lien against a
railroad for the value of ties furnished by the plaintiff for
its construction.

The S. H. Chatten Lumber Company sold the ties, which
were used in building a railroad from Scott City to Winona.
The total charge was about $43,000, on which it received pay-
ments of about $36,000. The road was built by the Kansas
Construction & Irrigation Company, under contract with the
Scott City Northern Railroad Company, the owner of the road.
The railroad company, as part payment to the construction
company, issued to it first mortgage bonds to the amount of
$825,000, the mortgage covering all the property of the com-
pany, including that subsequently acquired and the road when
built. These bonds were used by the construction company as
security for a loan of $600,000, for use in building the road.
The Commonwealth Trust Company, of St. Louis, furnished a

37—96 KAN.

part of this amount directly. The remainder was loaned by a bank through its procurement. It later became owner of the entire debt. The construction of the railroad was begun in January and completed in July, 1911. In January, 1913, an action was begun for the foreclosure of the mortgage, and upon the judgment thereon (rendered May 31) the prop-erty of the railroad company was, on August 6 of that year, sold to the Colorado, Kansas & Oklahoma Railroad Company, which is now operating it. The present action was begun July 23, 1913. The plaintiff—the lumber company— was given a personal judgment against the construction company and its receiver and the Scott City Northern Railroad Company and its receivers appointed in the foreclosure action, for $10,651.53, and was awarded a first lien against the railroad property for $6690. The appeal is taken by the Scott City Northern Railroad Company and its receivers, the Commonwealth Trust Company, and the Colorado, Kansas & Oklahoma Railroad Company.

The contract for the ties was made between the lumber company and the Garden City, Gulf & Northern Railroad Company. That railroad company, promoted by B. M. McCue and E. A. Tennis, had constructed and was operating a road from Garden City to Scott City, and the purpose at the time was to extend this road to the north, the ties being designed for use in that connection. Afterwards it was determined by the same promoters to organize a new corporation to build the road between Scott City and Winona, and the Scott City Northern Railroad Company was the result. McCue and Tennis guaranteed the payment of the accounts to be incurred in filling the contract. The lumber company charged the ties on its books to the Garden City & Northern Railroad Company, and McCue and Tennis, president and vice president. They were shipped to that company and the construction company. Payments were made from time to time by the construction company out of the funds provided by the trust company, sometimes by drafts upon that company. On September 12, 1911, McCue and Tennis, as president and vice president, executed in the name of the Scott City Northern Railroad Company a note for the unpaid balance, amounting to $8662.97.

The statute authorizes railway corporations to mortgage

their property and franchises. (Gen. Stat. 1909, § 6997.)
This confers authority to mortgage after-acquired property.
(33 Cyc. 487, 499; 23 A. & E. Encycl. of L. 799.)    Statutes
giving liens for labor and material furnished in the construc-
tion of railroads are quite common. (33 Cyc. 465; 23 A. & E.
Encycl. of L. 813.) Kansas formerly had such a statute. (Laws
1865, ch. 45, § 1, p. 106.)    But the revision of 1868 resulted
in its repeal. (*Burgess v. Railroad Company,* 18 Kan. 53.)
Without such statute no lien arises from the mere fact that
material sold for the purpose is used in the construction of the
road.    (*Burgess v. Railroad Company,* supra.)    The lumber
company in its petition alleged that the ties were sold under
a contract that it was to have a lien upon the railroad; but
if any evidence was given in support of this allegation it is
rendered unimportant by findings of the jury to the effect that
no such contract was made, and that the ties were sold solely
on the general credit of the Garden City, Gulf & Northern
Railroad Company, McCue and Tennis, without any purpose
of claiming a lien.    No judgment lien resulted in this case, be-
cause the property, as already stated, had changed hands, and
no longer belonged to the Scott City Northern Railroad Com-
pany.

The rule "giving priority to the last creditor for aiding to
conserve the thing   .   .   .   has never been introduced into
our laws except in maritime cases, which stand on a particular
reason." (*Galveston Railroad v. Cowdrey,* 78 U. S. 459, 482.)
Unpaid claims for right of way are made a charge against the
road, but in the case of condemnation proceedings this is be-
cause the title only passes subject to payment (*Trust Co. v.
Railroad Co.,* 93 Kan. 340, 144 Pac. 210), and in the case of
purchase because of a vendor's lien (34 Cyc. 60), which ordi-
narily is not recognized in this state (*Simpson v. Mundee and
Brown,* 3 Kan. 172).    The power of a court to postpone prior
mortgage creditors of an insolvent corporation, in the hands
of a receiver, to those by whose contributions it has been main-
tained as a going concern, is limited to making such preferred
claims a charge against the earnings, or against the corporate
property where the earnings have been wrongfully applied
elsewhere. (33 Cyc. 529, 531; *Porter v. Pittsburg Bessemer
Steel Co.,* 120 U. S. 649, 671.)    That situation was not pleaded

or proved here. Moreover the plaintiff made no effort to have provision made for its account in the proceeding in which the receivers were appointed. It first suggested that it was entitled to an equitable lien in a letter to the trust company written in April, 1913.

A lien for the cost of bridges built for the same railroad has heretofore been sustained. (*Bridge Co. v. Railroad Co.*, 91 Kan. 887, 139 Pac. 357.) That decision was based upon the particular facts there presented, which in many respects are quite different from those of the present case. The bridges were built under contract with the railroad company, and the trust company was held to be interested in the enterprise jointly or in common with the railroad company, the construction company and the promoters, and to have undertaken the responsibility of seeing that the proceeds of the mortgage reached the materialmen. These issues were presented by the pleadings and evidence in this case. It was shown, however, that before the ties were shipped the trust company, in response to an inquiry, had written to the lumber company that it believed the funds supplied to the construction company were sufficient to construct the road, and that no unusual business risk would be assumed in furnishing the ties, but that it did not know whether the construction company intended to use all of the money for that purpose, and that it (the trust company) had made no arrangements to pay invoices for material, and that matters of this character would have to be arranged directly with the construction company; and the jury specifically found that the trust company had no connection with or interest in the enterprise of building the road outside of agreeing for a stated consideration to loan or secure a loan or loans of money to be used by the construction company in building it. Under the findings the trust company furnished money, for which it took security, and the lumber company furnished material, for which it took none. The part of the judgment giving the plaintiff a preferential lien must be set aside.

Errors assigned with regard to the personal judgment are not thought to require discussion. The note executed by McCue and Tennis is binding on the Scott City Northern Railroad Company. The judgment against the receivers of that

company is not to be given effect further than as a charge to the same extent as other unsecured judgments upon any funds that might by any possibility be in their hands available for its payment.

The cause is remanded with directions to modify the judgment by eliminating that part giving the plaintiff a lien.