## TERRITORIAL TRUST & SURETY CO. v. MISSOURI VALLEY BRIDGE & IRON CO.

No. 10273—Opinion Filed Sept 13, 1921.

(Syllabus.)

**1. Railroads — Liens — Priorities — Mortgage Bonds and Floating Debts.**

The general rule is that, in absence of statutory provision, unsecured floating debts due contractors and materialmen on account of the original construction of railroad bridge are not entitled to priority liens over bonds secured by mortgage representing funds actually expended in the construction of the road and held by bona fide purchasers.

**2. Same.**

In order that an equitable lien in favor of a contractor for building of a railroad bridge should be prior to an existing mortgage held by bona fide holders there must be some evidence to disclose that the holders of the bonds are not bona fide, or that they agreed to furnish the finances to build the road and failed to see that the funds were used in the construction

of the road, or their connection with the promoting company is such that the court can find the holder of the bonds is a part of the promoting company.

### 3. Same—Judgment—Sufficiency of Evidence.

The evidence examined, and held, there is no evidence to support the judgment decreeing the equitable lien prior to the prior existing trust deed given to secure the bonded indebtedness.

Error from District Court, Muskogee County; Irwin Donovan, Special Judge.

Action by the Territorial Trust & Surety Company against the Missouri Valley Bridge & Iron Company and others to foreclose deed of trust. Judgment for defendant named, and plaintiff brings error. Reversed.

O. L. Rider and Ed Hirsh, for plaintiff in error.

C. F. W. Dassley and L. J. Roach, for defendant in error.

McNEILL, J. The Territorial Trust & Surety Company commenced this action in the district court of Muskogee county against numerous defendants to foreclose a deed of trust executed December 16, 1912, by the Muskogee & Ft. Gibson Bridge Company upon a certain bridge and approaches thereto constructed across the Arkansas river, given to secure a bonded indebtedness in the sum of $60,000. The Missouri Valley Bridge & Iron Company was made a party defendant, and filed its answer, in the nature of a general denial, and by cross-petition asked to have a mechanic's lien it had filed against said property foreclosed to satisfy a claim of $20,169, and asked that said lien be declared prior to the deed of trust executed to the plaintiff. An amended cross petition was filed by the Missouri Valley Bridge & Iron Company, alleging it had served the necessary notice provided by law relating to liens on railroads, and asked it be decreed a lien under the provision of the statute, and prayed, further, it be decreed an equitable lien upon said bridge for the amount due, and the same be declared prior to the lien of plaintiff.

A jury was waived and the case was tried to the court, and upon the trial the parties entered into a stipulation, whereby it was agreed that the Missouri Valley Bridge & Iron Company had placed in the bridge labor and material in the sum of $13,000 more than it had received from any source, and if the court decided that the bridge company was entitled to a judgment against the Muskogee Company and the Muskogee & Ft. Gibson Bridge Company, that $13,000 should be the amount of that judgment, and the court should decide the question of priority of liens, and whether or not the Missouri Valley Bridge & Iron Company had a lien, and if so, whether it was prior to the mortgage lien claimed by the plaintiff. From the above statement it will be noticed that the Missouri Valley Bridge & Iron Company claimed it was entitled to, first, a lien under the general mechanic's lien law; second, a lien under the railroad lien law; and, third, an equitable lien. The trial court decreed the cross-petitioner was entitled to an equitable lien, and the same was prior to the deed of trust. The claim for a lien by reason of the filing of the mechanic's lien and the statutory lien has been abandoned by the Missouri Valley Bridge & Iron Company, and there is no contention made that it is entitled to a lien by virtue of the statute. The only question for determination is whether under the facts in the case, the equitable lien is entitled to priority over the trust deed of the plaintiff given to secure certain bonded indebtedness.

The material facts may be stated as follows:

The Muskogee & Ft. Gibson Bridge Company was a corporation organized for the purpose of building a bridge, leasing, mortgaging, or leasing a bridge across the Arkansas river near Muskogee. In August, 1911, an act of Congress was passed authorizing said company to construct, maintain, and operate a bridge across the Arkansas river.

The People's Electric Railway was operating a line of railway between Muskogee and Ft. Gibson and by agreement was using a bridge of the Frisco Railway Company in crossing said river. The Muskogee Company was authorized to construct electric and other railways, deal in stocks and bonds and other securities, to erect railways. It became the owner of the capital stock of the People's Electric Railway Company, and on February 2, 1912, entered into a contract with T. L. Gibson whereby it agreed, for consideration of $125,000, to transfer the capital stock of the People's Electric Railway Company to Gibson or any person whom he might designate, together with all notes, issues, and outstanding bonds and other indebtedness, and to construct a railroad bridge across the Arkansas river. The sum of $50,000 was paid, and the balance of $75,-

000 was to be paid as follows: $5,000 pending some controversy connected with rights of way; $20,000 when piers of bridge were completed; $15,000 when steel for bridge was delivered, and $35,000 when the bridge was completed.

On February 27, 1912, the Muskogee & Ft. Gibson Bridge Company entered into a contract with the Muskogee Company for the Muskogee Company to construct this bridge across the Arkansas river. The plans and specifications of the bridge were to be approved by T. L. Gibson and constructed to his satisfaction, as provided by the contract between Gibson and the Muskogee Company for the purchase of stock of the People's Electric Railway Company. The Muskogee & Ft. Gibson Bridge Company agreed to issue and deliver to the Muskogee Company all of its capital stock and all bonds that the Muskogee & Ft. Gibson Bridge Company might be required to issue in order to pay for the construction of said bridge and approaches.

On March 6, 1912, the Muskogee & Ft. Gibson Bridge Company entered into a contract with the Missouri Valley Bridge & Iron Company for the construction of said bridge, and agreed to pay the actual cost of labor and material plus 15 per cent., except certain material furnished by the Muskogee & Ft. Gibson Company, which was to be paid for on a different basis. The payments were to be made monthly on the engineer's estimate, except ten per cent. was to be paid on the completion of the bridge and final estimate. On March 20, 1912, the Muskogee Company executed a written guarantee to the Missouri Valley Bridge & Iron Company guaranteeing the payment provided for under its contract with the Muskogee & Ft. Gibson Bridge Company.

Work was commenced by the Missouri Valley Bridge & Iron Company on this bridge during the month of April, 1912; material was placed on the ground, but little work was done, owing to the fact that the Muskogee & Ft. Gibson Bridge Company failed to meet the payments provided for in the contract. In September the engineer of the Missouri Valley Bridge & Iron Company made an estimate of the cost to complete the bridge and fixed the amount at approximately $55,000. It appears, however, that the plans of the bridge were materially changed after the making of this estimate. While the work was suspended numerous conferences were had between the different companies and the officers of the Missouri Valley Bridge & Iron Company. On September

19, 1912, a supplemental agreement and contract was entered into between the Muskogee Company and T. L. Gibson and the Muskogee & Ft. Gibson Bridge Company. The contracts recited that certain payments had been made out of the funds in the hands of Gibson and there was something over $53,000 held by Gibson that would be due when the bridge was completed, and it was agreed that the Muskogee Company should execute a bond to Gibson in the sum of $50,000 and the $53,000 held by Gibson would be available for the purpose of paying the Missouri Valley Bridge & Iron Company for the bridge as the payments became due under its contract. The bond was executed by the Southern Surety Company, and almost immediately thereafter the Missouri Valley Bridge & Iron Company proceeded with the work.

The evidence disclosed numerous conferences were had with the different companies and the officers of the Missouri Valley Bridge & Iron Company had refused to proceed with building the bridge until there was some assurance it would receive its pay, and it refused to agree to complete the bridge for the amount of money in the hands of Gibson. It was familiar with the supplemental contracts entered into in September, although not a party to them, and as soon as the contracts were entered into it proceeded with the work, and the $53,000 held by T. L. Gibson was paid to it as its estimates were filed and approved. After the bridge was completed the Missouri Valley Bridge & Iron Company filed a mechanic's lien.

Plaintiff in error, for reversal, contends that there is no evidence to support a finding that the equitable lien of the bridge company is superior to its trust deed. The question of whether unsecured debts due contractors and materialmen on account of the construction of the railroad or railroad bridges are entitled to prior liens over the bonds secured by a mortgage or trust deed, was decided by the Supreme Court of the United States in the case of Henry H. Porter v. Pittsburg Bessemer Steel Co., 120 U. S. 649, 30 L. Ed. 830, where the court's holding, as stated in the first paragraph of the syllabus in 30 L. Ed., was as follows:

"Unsecured floating debts due contractors and materialmen on account of the original construction of a railroad, are not entitled to priority of lien over bonds, secured by mortgage, representing funds actually expended in the construction of the road and held by bona fide purchasers."

In the body of the opinion the court used the following language:

"The claims accrued after the mortgage had been executed and recorded, and after $1,000,000 of the bonds secured by it had been issued and pledged to innocent bona fide holders for value. We are not aware of any well-considered adjudged case which, in the absence of a statutory provision, holds that unsecured floating debts for construction are a lien on a railroad superior to the lien of a valid mortgage duly recorded, and of bonds secured thereby, and held by bona fide purchasers for value. The authorities are all the other way."

The court found that the Territorial Trust & Surety Company was the holder of the trust deed executed by the Muskogee & Ft. Gibson Bridge Company to secure bonds in the sum of $60,000, and the bridge company had made default in the terms of said bonds, and plaintiff was entitled to judgment on said bonds and decree of foreclosure of said mortgage.

The court found that the Missouri Valley Bridge & Iron Company was entitled to judgment against the Muskogee & Ft. Gibson Bridge Company and the Muskogee Company for the sum of $13,000, and was entitled to have the same declared an equitable lien against the property and to have priority over the trust deed. The court made other findings in regard to the easement over the bridge which it is unnecessary to consider.

Upon what theory the court held the equitable lien prior to the recorded trust deed, we are unable to say; but if it can be sustained upon any theory, the judgment must be affirmed. It is suggested that the trust company was not a bona fide holder for value, but this position is untenable, as the court found the trust company was a bona fide holder for value, and rendered judgment in its favor upon its bonds, ordered the property foreclosed to satisfy said judgment, and no appeal nor exception was taken to this portion of the judgment; so we are precluded from questioning that part of the judgment. The defendant in error appears to rely upon the theory that at the time of the execution of the mortgage, November 16, 1912, the bridge was not constructed and the property covered by the mortgage was not then in existence, and therefore the material and work placed upon the bridge would be prior to the mortgage. This contention is contrary to the rule announced in the case of Porter v. Pittsburgh Bessemer Steel Co., supra, and Chatten Lumber Co. v. Scott City Northern R. Co. (Kan.) 152 Pac. 665, unless the priority was made so by statute, and there is no contention that the parties have complied with the statute to have the benefit of the same. It is stated in the brief, however,

that the trust deed was executed November 16, 1912, and was not recorded until May 13, 1913, eleven days before the bridge was completed, and the cross-petitioner states it had no knowledge of the mortgage being filed until this suit was filed; but filing of trust deed was notice to all the parties, from the date of its filing. The Missouri Valley Bridge & Iron Company offered no evidence to show in what way it was prejudiced by this fact, and it is not even contended it was relying upon an equitable lien.

There are certain liens which will be decreed to be prior to existing mortgages. These liens are enumerated in the case of Chatten Lumber Co. v. Scott City Northern R. Co., supra,, and are classified as follows:

First: Liens where statutes allow liens for labor and material furnished in construction of railroads, citing Burgess v. Railroad Co., 18 Kan. 53, the court saying:

"Without such statute no lien arises from the mere fact that material sold for the purpose was used in the construction of the road."

Cases holding that equitable liens are prior to a mortage are: Claims for right of way against the road, see Trust Co. v. R. R., 93 Kan. 340, 144 Pac. 210.

Third: Where the bonds are executed prior to the time the railroad is built, and the court under the peculiar facts treats the holders of the bonds as the building company.

Fourth: Where the holders of the bonds agree to furnish the finances to build a road and fail to see that the funds advanced by them are used in the construction of the railroad.

If there is any evidence in the record, except the deposition of C. N. Haskell, relating to the execution of the trust deed and the consideration therefor, or if there is anything to contradict his testimony on this point, it is not called to our attention. He testified, in substance, he was president of the Muskogee Company, and owned less than one-third of the stock of the company; was president of the Territorial Trust & Surety Company, and owned about one-fourth of its stock; that at the time the contracts of September, 1912, were entered into between the various companies the Territorial Trust & Surety Company had an order that the money in the hands off T. L. Gibson, to wit, about $50,000, be paid to it, and in order for the Muskogee Company and the Muskogee & Ft. Gibson Bridge Company to carry out its contracts with the Missouri Valley Bridge & Iron Company the Territorial Trust & Surety Company

surrendered its order, that said fund might be available to pay the Missouri Valley Bridge & Iron Company, and in lieu thereof took the trust deed, and in doing so it relied upon the estimate made by the engineer of the Missouri Valley Bridge & Iron Company that it would not cost to exceed $55,000 to complete the bridge. This evidence is not contradicted; or, at least, the portion of it to the effect that the company had an order for the money in the hands of Gibson, and surrendered the same. If this is true, it was a bona fide purchaser for value, which brings the facts almost squarely within the case of Chatten Lumber Co. v. Scott City Northern R. Co., supra. The Missouri Valley Bridge & Iron Company did receive the full $53,000 in the hands of Gibson which was released by the Territorial Trust & Surety Company when it procured this deed in lieu thereof.

The cases holding the equitable lien superior to prior mortgages are:

Kilpatrick v. K. C. & B. Ry. Co. (Neb.) 57 N. W. 664, 41 Am. St. Rep. 741. In that case the court held that the investment company should be regarded as promoter of the road under the facts in that case.

In the case of Trocon v. Scott City Northern R. Co. (Kan.) 139 Pac. 357, the syllabus announces the rule that the equitable lien for labor or material is superior to the mortgage under the facts in that case; and, discussing the case in the body of the opinion, the court stated its reasons as follows:

"The trust company undertook to finance a projected railroad on the express agreement that the funds were to be advanced and used as the construction progressed and it was to have a first lien on the completed line which it was contemplated should be paid for out of the funds advanced. It was its right, if not its duty, to see, especially after taking charge of the disbursments, that the proceeds of the loan went to pay for the constituent material going into the road. It knew that the construction company which was borrowing the money had contracted to build and complete the road, and it might or should have known what provision was being made to pay for the bridges which made the complete line a possibility."

The Supreme Court of Kansas, in a later decision, in the case of Chatten Lumber Co. v. Scott City Northern R. Co., supra, in commenting on the above case stated that under the peculiar facts the court held the equitable lien prior to the mortgage. The peculiar facts are these:

"It was its right, if not its duty, to see, especially after taking charge of the disbursements, that the proceeds of the loan went to pay for the constituent material going into the road."

Now, there is another line of cases, not, however, applicable to the case at bar, to wit: McIlhenny v. Binz, 80 Tex. 1, 26 Am. St. Rep. 705, and Farmers' Loan & Trust Co. v. K. C., W. & N. W. Railway, 53 Fed. 182—as these cases deal with the right of those who perform labor and furnish material and have a right to a statutory lien upon the railroad but by reason of a receiver being appointed their lien would be defeated, and in cases where a receiver is appointed and operates the road, the labor and materialmen are entitled to a priority to the earnings of the company over the bondholder. No evidence was introduced in this case to bring the case within any of the exceptions or classes where an equitable lien was given priority. No evidence is pointed out in the brief to support it, and we recall none in the record. The record is very voluminous and a great portion of the same immaterial. It necessarily follows, when the trial court found the trust company was entitled to judgment upon the bonds and for foreclosure of its mortgage, it was entitled to priority over the equitable lien, unless there are some peculiar facts that bring the case within the exceptions to the general rule, and the record discloses none.

It was, therefore, error for the trial court to hold that the bonding company mortgage was inferior to the equitable lien. The judgment is set aside, and the lien of the bridge company held to be inferior to that of the trust deed.

HARRISON, C. J., and PITCHFORD, JOHNSON, MILLER, ELTING, KENNAMER, and NICHOLSON, JJ., concur. KANE, J., not participating.